

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 10-03454 |
| | Chapter 7 |
| The Mortgage Store, Inc., | |
| Debtor. | |
| | |
| Dane Field, | Adv. Pro. No. 12-90066 |
| Plaintiff, | |
| vs. | |
| Wells Fargo, N.A., et al., | |
| Defendants. | Re: Docket No. 45 |

## PROPOSED FINDINGS OF FACT AND RECOMMENDED JUDGMENT REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The trustee in this chapter 7 case alleges that two transfers from the debtor,

The Mortgage Store, Inc. (TMS), to the defendant, Wells Fargo, are avoidable,

fraudulent transfers. On September 13, 2013, the trustee moved for summary

judgment. I propose that the district court find that TMS made the two transfers with actual intent to hinder, delay, or defraud its creditors and that TMS did not receive a reasonably equivalent value in exchange for the transfers. I therefore recommend that the district court enter judgment in favor of the TMS trustee in the amount of $393,487.26, plus prejudgment interest in the amount of $229,210.21 as of September 13, 2013, and additional prejudgment interest at the rate of 10 per cent per year from September 13, 2013 to the entry of judgment.

## FACTS

Between 1996 and 2008, George Lindell was the sole shareholder and president of TMS. Mr. Lindell regularly borrowed money from TMS.

In 2005, Mr. Lindell obtained a personal line of credit from Wells Fargo, which was secured by a mortgage on his residence. Def's Opp'n, at 8. TMS was not liable to repay Mr. Lindell's borrowings from Wells Fargo.

On August 21, 2007, Mr. Lindell drew on his line of credit with Wells Fargo by writing a check for $196,000 to TMS and depositing it in TMS' checking account. *Id.*

On October 10, 2007, TMS made a wire transfer to Wells Fargo in the amount of $197,555.92. *Id.*; Def's Opp'n, at 9. This repaid the $196,000 which Mr. Lindell had borrowed from Wells Fargo, plus $1,555.95 in interest. Def's

U.S. Bankruptcy Court - Hawaii  #12-90066  Dkt # 61  Filed 11/26/13  Page 2 of 21

Opp'n, at 9.

Mr. Lindell again drew on his Wells Fargo line of credit on November 27, 2007 by writing a check to TMS for $195,000 and depositing it in TMS' checking account. *Id.*

On December 26, 2007, TMS made a wire transfer to Wells Fargo in the amount of $195,931.34. Def's Opp'n at 9. Like the October 10 transfer, this amount repaid Mr. Lindell's second draw on his Wells Fargo line of credit plus interest. *Id.*

Wells Fargo has offered no evidence that TMS owed a debt either to Wells Fargo or to Mr. Lindell when the two transfers were made or that TMS got any economic benefit in return for its payment of Mr. Lindell's personal debt to Wells Fargo.

On December 31, 2009, Mr. Lindell transferred his interest in TMS to his daughter, Holly Hoaeae, and she became the president of TMS. Dkt. 46-1, at 13.[1]

On November 12, 2010, TMS filed this chapter 7 bankruptcy. Dkt. 1. At TMS' meeting of creditors, Ms. Hoaeae stated that she "always believed the assets [of TMS] covered the liabilities up until [2010]," when TMS filed its bankruptcy.

---

[1] Wells Fargo admits that the purported sale occurred but objects to the admission of the written sale agreement. Dkt. 51 at 2. Because the fact of the sale is admitted and the terms of the sale have no bearing on my decision, I need not rule on the admissibility of the document.

3

Dkt. 51-18, at 29. However, at the same meeting, she also stated that she had little familiarity with TMS' accounting and that Mr. Lindell and an unidentified woman were responsible for the bookkeeping. Dkt. 54-1, at 23; Dkt. 51-18, at 18. In fact, she never had personal access to TMS' QuickBooks files, even after she became 100% shareholder. Dkt. 51-18, at 18.

Mr. Lindell and Ms. Hoaeae later stipulated to judgments in favor of the trustee. Dkt. 46-2, at 2-10. They admitted that while they were in control of TMS, they "regularly caused [TMS] to transfer funds of [TMS] to" themselves or for or their own benefit, or for the benefit of their families. *Id.* Additionally, they admitted to making these transfers with "actual intent to hinder, delay, or defraud creditors of [TMS]." *Id.* Mr. Lindell admitted to causing over $5 million in damages; and Ms. Hoaeae admitted to causing over $1 million in damages. *Id.*

No reasonable fact finder would credit Ms. Hoaeae's testimony at the meeting of creditors that she believed TMS had enough assets to cover its liabilities. She admitted that she was never familiar with TMS' accounting, and she later admitted to defrauding TMS' creditors. Moreover, Ms. Hoaeae testified only about TMS' solvency and not about its intention to hinder, delay, or defraud its creditors.

On August 9, 2012, the trustee brought this adversary proceeding to avoid

4

the two transfers from TMS to Wells Fargo. He has now moved for summary

judgment, claiming that the transfers were both actually and constructively

fraudulent. The court held a hearing on the motion on October 25, 2013.

## STANDARD

Summary judgment is proper when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a), Fed. R. Bankr. P. 7056; see also *Barboza v.

New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008). This standard

mirrors the standard for a directed verdict: the court must grant summary judgment

if "there can be but one reasonable conclusion . . . ." *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 250 (1986).

In determining whether a party is entitled to summary judgment, the court

views the evidence in the light most favorable to the nonmoving party and all

reasonable inferences are to be drawn in favor of the nonmoving party. *Scott v.

Harris*, 550 U.S. 372, 378 (2007). The moving party must first make a prima facie

showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to either

submit affirmative evidence negating an element of the moving party's claim or to

establish that the moving party is not entitled to summary judgment. *Id.*

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 61   Filed  11/26/13   Page 5 of 21

A party may object to evidence submitted in support of a summary judgment motion if the evidence cannot be presented in a form that would be admissible. Fed. R. Civ. P. 56(c)(2).

Authentication is "a condition precedent to admissibility." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, **773** (9th Cir. 2002). In order to authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "However, a proper foundation *need not be established through personal knowledge* but can rest on any manner permitted by Federal Rule of Evidence 901(b) . . . ." *Orr*, 285 F.32 at 774-75. (emphasis added). FRE 901(b)(1) provides that a proponent may authenticate an item of evidence by a witness's "testimony that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1).

## DISCUSSION

The trustee argues that the two transfers from TMS to Wells Fargo were both actually fraudulent under Haw. Rev. Stat. §§ 651C-4(a) and constructively fraudulent under section 651C-5(a). I find (and I recommend that the district court find) that TMS made the transfers with intent to hinder, delay, or defraud his creditors and Wells Fargo did not give reasonably equivalent value in exchange for the transfers. Therefore, the trustee is entitled to prevail under section 651C-

6

4(a) and I need not address the constructive fraud claim under section 651C-5(a).

## I.     THE TRUSTEE'S CASE FOR FRAUDULENT INTENT

Under section 544(b) of the Bankruptcy Code, the trustee can avoid any transfer that a creditor of the debtor could avoid.  The Hawaii Uniform Fraudulent Transfer Act permits a creditor to avoid "a transfer made or obligation incurred by a debtor [that] is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor . . . ." Haw. Rev. Stat. § 651C-4(a).

In order to prevail, the trustee must prove that (1) TMS had at least one creditor, (2) TMS made the challenged transfers, and (3) TMS made those transfers with the actual intent to hinder, delay, or defraud at least one of its creditors.

### A.     Existence of a Creditor

There is no genuine dispute that TMS has many creditors.  The claims register in the main bankruptcy case shows that many creditors have filed claims. The court can take judicial notice of the claims register for the purpose of establishing that parties have filed proofs of claim.  "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 61   Filed 11/26/13   Page 7 of 21

accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). The claims register accurately and readily determines that many creditors have filed claims. The accuracy of the claims register, which the clerk of court maintains, cannot reasonably be questioned and the fact that parties have filed proofs of claim is not subject to reasonable dispute.

Wells Fargo objects to judicial notice of the claims register (Dkt. 58, at 13) based on *Biggs v. Capital Factors, Inc. (In re Herb Goetz and Marlen Horn Assoc., Inc.)*, 120 F.3d 268 (9th Cir.1997) (unpublished). That case has no precedential effect and it may not be cited to the court in this case. Fed. R. App. Pro., Ninth Cir. R. 36-3. It is also not on point because it deals with judicial notice of the facts asserted in documents filed with the bankruptcy court. It is appropriate to take judicial notice of the claims register for the purpose of establishing that claims have been filed, even if it may not be appropriate to take judicial notice of the contents of the proofs of claim. Wells Fargo's objection should be overruled.

A "creditor" is someone who has a claim against the debtor. 11 U.S.C. § 101(10)(A). A filed claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 61   Filed 11/26/13   Page 8 of 21

Becauase it is indisputable that many parties have filed proofs of claim, and because those claims are presumptively valid as a matter of bankruptcy law, there is no genuine dispute that TMS has creditors.

## B. Occurrence of Transfers

Wells Fargo has admitted that it received the two challenged transfers. Def's Opp at 9. Its admission renders moot its objection to the trustee's evidence of the transfers.

## C. Intent to Defraud

To prove TMS' fraudulent intent, the trustee relies primarily on Mr. Lindell's and Ms. Hoaeae's admission in the stipulated judgments that, while they owned and operated TMS, they regularly made transfers that benefitted themselves or their families with intent to hinder, delay, and defraud creditors. Wells Fargo makes a multi-pronged attack on the stipulated judgments.

### 1. Admissibility of Evidence

Wells Fargo objects to admitting these two documents, claiming that they are not relevant, they constitute inadmissible hearsay, they should be excluded due to unfair prejudice, and they constitute inadmissible character evidence. Dkt. 52, at 4-5.

#### a. Relevance

9

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The admissions contained in the stipulated judgments make it more probable that TMS made the two transfers with the intent to hinder, delay or defraud its creditors, and that fact (TMS' fraudulent intention) is "of consequence" to this action. Further, Ms. Hoaeae's stipulation helps to evaluate her testimony at the meeting of creditors that she believed that TMS always had enough assets to pay its creditors.

b.    *Hearsay*

The documents are not inadmissible hearsay.

First, Mr. Lindell's stipulation is admissible under Fed. R. Evid. 804(b)(3)(A), which provides that statements against interest are admissible when the declarant is unavailable. *See* Fed. R. Evid. 804. A declarant is unavailable if he refuses to testify about a matter in spite of a court order to do so. Fed. R. Evid. 804(a)(2).

Mr. Lindell is unavailable. At Wells Fargo's deposition of Mr. Lindell, which he attended under a subpoena, Mr. Lindell refused to answer Wells Fargo's questions and repeatedly asserted his Fifth Amendment privilege when questioned about TMS' transfers to Wells Fargo. *See* Dkts. 40, 51-20, at 1-6.

10

Mr. Lindell's admission that he intentionally hindered, delayed, or defrauded creditors were statements against interest, because they potentially expose him to civil and criminal liability.

Because Mr. Lindell is unavailable and his admission to defrauding creditors is a statement against interest, the stipulated judgment is admissible under Fed. R. Evid. 804(b)(3)(A).

Second, both Mr. Lindell's and Ms. Hoaeae's stipulated judgments are admissible under rule 807. A statement is admissible under this rule if:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807.

The stipulated judgments have equivalent circumstantial guarantees of trustworthiness. Both parties personally admitted to defrauding TMS' creditors, a fact that could expose them to both civil and criminal liability. They both stipulated to large, non-dischargeable judgments for damages. Both were

11

represented by competent counsel. *See* Dkt. 46-2 at 3-10. No reasonable person would make such an admission unless the facts were true.

The stipulations are offered as evidence of material facts. Intent to defraud is one of the elements of the trustee's case.

The statements are more probative than any other evidence the trustee can obtain through reasonable efforts. Mr. Lindell is the best source of evidence about his intentions while he was running TMS. Mr. Lindell has already asserted his Fifth Amendment privilege, so it is unlikely that the trustee will be able obtain Mr. Lindell's testimony. Similarly, given that Ms. Hoaeae has been indicted for her conduct in connection with TMS, it is equally unlikely that the trustee will be able to obtain her testimony.

Finally, admitting the stipulated judgments will best serve the rules of evidence and the interests of justice. The rules exclude hearsay in order to keep out unreliable evidence. *See* 30 Charles Alan Wright, et al., *Federal Practice and Procedure* § 6324 (1st ed.). This evidence, however, is highly reliable. Admitting the statements allows for accurate adjudication of this matter, which serves the interests of justice.

          *c.*      *Unfair Prejudice*

The court may exclude relevant evidence if its probative value is

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 61   Filed 11/26/13   Page 12 of 21

substantially outweighed by unfair prejudice. Fed. R. Evid. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Advisory Committee's Notes on Fed. R. Evid. 403, 28 U.S.C. App., p. 860).

Wells Fargo's objection is meritless. The stipulated judgments have a high degree of probative value and Wells Fargo does not identify any unfair prejudice that it would suffer if the stipulated judgments were admitted.

d.      *Character Evidence*

Wells Fargo makes the absurd claim that the stipulated judgments constitute inadmissible character evidence. Evidence of an act is not admissible in order to prove a person's character and show that he acted in conformity with that character trait. Fed. R. Evid. 404(b). Courts tend to characterize 404(b) as a ban on so-called "propensity evidence." *See* 22A Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5232 (2d ed.). The stipulated judgments were not offered to prove that anyone had a propensity to act in a certain way. Instead, they were offered to prove that Mr. Lindell and Ms. Hoaeae <u>did</u> act in a certain way – they looted TMS with the intention of defrauding its creditors.

13

2.     **Sufficiency of Evidence**

Wells Fargo argues that the stipulated judgments are not sufficient to support summary judgment in the trustee's favor.  I reject these arguments.

First, Wells Fargo argues that Mr. Lindell's stipulated judgment does not specify a time frame during which he made transfers that benefitted himself or his family with intent to hinder, delay, or defraud creditors. Mr. Lindell stipulated that his fraudulent conduct caused TMS to suffer $5 million of damages.  This amount is apparently well in excess of all of the money that he took out of the company. Dkt. 46-2, at 33. The only reasonable inference one can draw from these facts is that Mr. Lindell admitted that all of the transfers from TMS to his benefit, including the 2007 transfers, were made with fraudulent intent.

Next, Wells Fargo argues that Mr. Lindell's stipulated judgment is not specific to the transfers made to Wells Fargo. This is irrelevant.  Mr. Lindell admitted that he "regularly" made transfers with fraudulent intent. Dkt. 46-2, at 2-10. The amount of damages to which he stipulated shows that all of the transfers were made with fraudulent intent.  The only reasonable inference from the stipulated judgments is that the two transfers from TMS to Wells Fargo were made with the intent to hinder, delay, or defraud creditors.

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 61   Filed 11/26/13   Page 14 of 21

### 3. Ms. Hoaeae's Testimony Does Not Create a Genuine Dispute of Fact.

The only countervailing evidence Wells Fargo relies on is Ms. Hoaeae's testimony at the meeting of creditors, where she stated that she always believed that "the assets [of TMS] have been enough to cover [TMS'] debts." Dkt. 51-18, at 29. Her statement is not sufficient to create a genuine issue of material fact.

First, her testimony relates to TMS' solvency – its ability to pay its debts. A transfer made with the intent to defraud creditors is avoidable even if the transferor was solvent at the time of the transfer. Haw. Rev. Stat. § 651C-4(a)(1).

Second, Ms. Hoaeae said nothing about Mr. Lindell's intentions. Her testimony does not refute Mr. Lindell's admission of his fraudulent intent.

Third, Ms. Hoaeae admitted that she had little if any knowledge of TMS' financial situation even after she became TMS' owner and president. At the same meeting of creditors she also testified that essentially all of her knowledge about TMS' finances came from Mr. Lindell, who later stipulated that he regularly made transfers with the intent to defraud TMS' creditors.

Fourth, Ms. Hoaeae also stipulated that she regularly transferred funds with intent to defraud her creditors for her own her for family's benefit.

There is only one *reasonable* inference from the evidence in the record: Mr. Lindell directed TMS to pay his personal debt to Wells Fargo with the intention of

U.S. Bankruptcy Court - Hawaii  #12-90066  Dkt # 61  Filed 11/26/13  Page 15 of 21

defrauding TMS' creditors. Therefore, summary judgment on the issue of intent is appropriate.

## II.   Wells Fargo's Affirmative Defense of Good Faith and Value

Wells Fargo has an affirmative defense if it proves that it took the transfers in good faith, and that it gave reasonably equivalent value for the transfer. Haw. Rev. Stat. § 651C-4(a)(1).  Wells Fargo bears the burden of establishing both of these elements.  Haw. Rev. Stat. § 651C-8(a); *Hayes v. Palm Seedlings Partners-A (In re Agricultural Research and Technology Group, Inc. )*, 916 F.2d 528, 535 (9th Cir. 1990).

### A.   Good Faith

A person does not take in good faith when, looking at objective facts, the circumstances would alert a reasonable person to the debtor's fraudulent purpose, and diligent inquiry would have discovered the fraudulent purpose. *Hayes,* 916 F.2d at 535.

Wells Fargo has shown that it took the transfers in good faith. There is nothing in the record to suggest that Wells Fargo should have suspected Mr. Lindell's fraudulent purpose.

### B.   Reasonably Equivalent Value

"Value" is property or satisfaction of an antecedent debt. *Hayes*, 916 F.2d at

16

540; Haw. Rev. Stats. 651C-3(a). Whether the defendant gave value must be viewed from the perspective of the transferor's creditors. *Hayes*, 916 F.2d at 540. "The primary focus of the reasonable value inquiry must be on whether the *transferor* . . . received reasonably equivalent value, not on whether the defendants gave reasonably equivalent value to someone else." *Field v. Marumoto (In re Maui Indus. Loan & Finance Co.)*, No. 12-90015, 2013 WL 1909536, at *2 (Bankr. D. Haw. May 8, 2013) (citing *Hayes v. Palm Seedlings Partners-A (In re Agricultural Research & Technology Group, Inc.*, 916 F.2d 528, 540 (9th Cir. 1990)).

Wells Fargo did not give TMS any value for the two transfers. It is true that Mr. Lindell transferred to TMS the money he borrowed from Wells Fargo, but TMS had no obligation to repay Mr. Lindell's debt to TMS. TMS' transfers to Wells Fargo left TMS in a worse financial position; it had less cash in its accounts and none of its debts were reduced. Thus, from the perspective of TMS' creditors, TMS received no value in exchange for its payment of Mr. Lindell's personal debt to Wells Fargo.

Wells Fargo argues that the court should rely on the "indirect benefit" theory to find that Wells Fargo gave reasonably equivalent value. *See* Def's Opp, at 22-26. Wells Fargo relies on *Frontier Bank v. Brown (In re N. Merch., Inc.)*,

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 61   Filed 11/26/13   Page 17 of 21

371 F.3d 1056 (9th Cir. 2004) and *Harman v. First Am. Bank (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479 (4th Cir. 1992). *Id.* In both cases, lenders lent money to corporate shareholders, and the shareholders then lent that money to the debtor corporations. *Brown*, 371 F.3d at 1057-58; *Harman* 956 F.2d at 480-81. Both transactions were structured as loans from the principals to the debtor corporations evidenced by promissory notes. *Brown*, 371 F.3d at 1057-58; *Harman*, 956 F.2d at 480-81. And in *Brown*, the debtor corporation granted the lender a security interest in its property to secure the debt. *Brown*, 371 F.3d at 1058. The debtor corporations then repaid the lender directly. In both cases, the debtor corporations benefitted from the payments: the debtor corporations' debts to the shareholders were discharged when the debtor corporations paid the lender. *Brown*, 371 F.3d at 1059 (citing *Harman*, 956 F.2d at 481).

The indirect benefit theory does not apply to these transfers. Wells Fargo has not established that TMS owed a debt to Mr. Lindell. (Wells Fargo does not argue that TMS owed a debt to it.) TMS' transfers to Wells Fargo, then, did not reduce any of TMS' debts. Because TMS got nothing in exchange for the transfers, Wells Fargo did not give "value" to TMS.

In order to prevail, Wells Fargo must show that TMS owed money to Mr. Lindell. The trustee has offered extensive evidence to show that the exact

18

opposite is true: that Mr. Lindell was heavily indebted to TMS. Wells Fargo submitted voluminous objections to the trustee's evidence on this point. But this is a smokescreen. Wells Fargo has the burden of proving that it gave value to TMS in exchange for the payments. This means that Wells Fargo must prove that TMS owed a debt to Mr. Lindell that the payments discharged. Therefore, even if all of the trustee's evidence on this point were inadmissible, Wells Fargo would still lose because it has the burden of proof on the affirmative defense of value.

## III. Wells Fargo's Fairness Argument

Wells Fargo seeks to avoid liability on the second transfer by relying on a "fairness" theory. In a footnote in its opposition to summary judgment and at the hearing on this motion, Wells Fargo argued that because Mr. Lindell's line of credit was a revolving line of credit, it should only be held accountable, at most, for TMS' first transfer. Def's Opp, at 25-26. Its argument appears to be that Mr. Lindell really drew the same money from his line of credit twice. It cites no authority in support of this theory, except a cursory reference to equitable principles. *Id.* Moreover, the argument appears to rest on the absurd premise that Wells Fargo sent money to TMS, TMS returned the very same money to Wells Fargo, Wells Fargo once again handed the very same money back to TMS, and TMS returned the same money to Wells Fargo. There is no evidence to support

19

the notion that both TMS and Wells Fargo repeatedly handed a discrete and identifiable "box of money" back and forth. Even if Wells Fargo could prove that, Wells Fargo offers no legal authority for the proposition that its liability should be reduced as a result.

## IV.    Prejudgment Interest

The court has discretion to grant prejudgment interest under state law on the fraudulent transfers from the date each transfer was made. *In re Slatkin*, 525 F.3d 805, 820 (9th Cir. 2008); *Hayes*, 916 F.2d 528, 541-42 (9th Cir. 1990). Under Hawaii law, "[p]rejudgment interest is an element of complete compensation. Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *Kalawaia v. AIG Haw. Ins. Co.*, 90 Haw. 167, 172, 977 P.2d 175, 180 (1999); *see also Molinar v. Schweizer*, 95 Haw. 331, 335, 22 P.3d 978, 982 (2001) (stating that "prejudgment interest compensates for the inevitable litigation delay in being reimbursed for damages incurred"). The purpose of prejudgment interest is to "allow the court to designate the commencement date of interest in order to correct the injustice when a judgment is delayed for a long period of time for any reason, including litigation delays." *Leibert v. Fin. Factors, Ltd.*, 71 Haw. 285, 293, 788

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 61   Filed 11/26/13   Page 20 of 21

P.2d 833, 838 (1990); *Metcalf v. Voluntary Employees' Benefit Ass'n of Haw.*, 99 Haw. 53, 61, 52 P.3d 823, 831 (2002).

Hawaii state law applies when setting the appropriate interest rate. *See Hayes*, 916 F.2d at 541 ("State law regarding prejudgment interest is applicable via 11 U.S.C. § 544(b)."); *In re Acequia, Inc.*, 34 F.3d at 818 n.4. The trustee should recover pre-judgment interest at the Hawaii rate of 10 percent per annum from the date on which the transfers were made. Haw. Rev. Stat. § 636-16; *Donell*, 533 F.3d at 772; *Eastman v. McGowan*, 86 Haw. 21, 28, 946 P.2d 1317, 1324 (1997).

* * *

For these reasons, I propose that the district court find that TMS made the two transfers to Wells Fargo with the intent to hinder, delay, or defraud its creditors and that Wells Fargo has failed to prove that TMS received any value in exchange for those transfers. I recommend that the district court enter judgment in favor of the trustee in the amount of $393,487.26, plus prejudgment interest in the amount of $229,210.21 as of September 13, 2013, and additional prejudgment interest at the rate of 10 per cent per year from September 13, 2013 to the entry of judgment.

**END OF ORDER**

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 61   Filed 11/26/13   Page 21 of 21