Date Signed:
May 7, 2015

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge



# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>THE MORTGAGE STORE, INC.<br><br>Debtor. | Case No. 10-03454<br>Chapter 7 |
| DANE S. FIELD, Bankruptcy Trustee of The Mortgage Store,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Adv. Pro. No. 12-90066<br>USDC Civil No. 14-00064 DKW-KSC<br><br>Re: Docket No. 91 |

### MEMORANDUM OF DECISION ON
### MOTION FOR SUMMARY JUDGMENT AS TO
### CONSTRUCTIVELY FRAUDULENT TRANSFERS

The trustee in this chapter 7 case alleges that two transfers from the debtor,

The Mortgage Store, Inc. (TMS), to the defendant, Wells Fargo Bank, N.A., are

avoidable, fraudulent transfers. The TMS trustee argues that TMS made the transfers

with the actual intent to hinder, delay, or defraud creditors, and also that the transfers were "constructively" fraudulent.

The TMS trustee seeks summary judgment on his "constructive fraud" claim. I will deny the motion because there are genuine issues of material fact concerning TMS's financial condition on the date of the transfers.

I.  STATEMENT OF FACTS

    A.  Undisputed Facts.

Between 1996 and 2008, George Lindell was the sole shareholder and president of TMS.[1]

In 2005, Mr. Lindell obtained a personal line of credit from Wells Fargo, which was secured by a mortgage on his residence. TMS had no liability to Wells Fargo to repay advances on Mr. Lindell's line of credit.[2]

On August 21, 2007, Mr. Lindell drew on his line of credit with Wells Fargo by writing a check for $196,000 to TMS and depositing it in TMS's checking account.[3]

On October 10, 2007, TMS made a wire transfer to Wells Fargo in the amount of $197,555.92. This repaid the $196,000 which Mr. Lindell had borrowed from Wells

---

[1] Dkt. 89 at 2 ¶ 1; dkt. 190 at 2 ¶ 1.

[2] Dkt. 89 at 3 ¶ 4; dkt. 190 at 2 ¶ 4; dkt 50-1 at 2-3.

[3] Dkt. 50-1 at 3-4.

2

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 247   Filed 05/07/15   Page 2 of 12

Fargo, plus $1,555.95 in interest.[4]

Mr. Lindell again drew on his Wells Fargo line of credit on November 27, 2007 by writing a check to TMS for $195,000 and depositing it in TMS' checking account.[5]

On December 26, 2007, TMS made a wire transfer to Wells Fargo in the amount of $195,931.34. This amount repaid Mr. Lindell's second draw on his Wells Fargo line of credit plus interest.[6]

On the dates of both payments to Wells Fargo, TMS had creditors whose claims have not been paid.[7]

Wells Fargo took both transfers in good faith.

On December 31, 2009, Mr. Lindell transferred his interest in TMS to his daughter, Holly Hoaeae, and she became the president of TMS.[8]

### B.  Disputed Factual Issues.

There are three disputed factual issues:

1.  Whether TMS received a reasonably equivalent value in exchange for the transfers;

2.  Whether TMS was adequately capitalized and able to pay its debts when

---

[4] Dkt. 50-1 at 4; dkt. 89 at 2 ¶ 2; dkt. 190 at 2 ¶ 2.

[5] Dkt. 50-1 at 4.

[6] Dkt. 50-1 at 4-5; dkt. 89 at 2 ¶ 2; dkt. 190 at 2 ¶ 2.

[7] Dkt. 89 at 6 ¶ 16; dkt. 190 at 5 ¶ 16.

[8] Dkt. 89 at 2 ¶ 1; dkt. 190 at 2 ¶ 1.

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 247   Filed 05/07/15   Page 3 of 12

due; and

3. Whether TMS was insolvent at the time it made the transfers to Wells Fargo.

**C. Procedural History.**

On November 12, 2010, TMS filed this chapter 7 bankruptcy case.

Many creditors have filed proofs of claim in the bankruptcy case to which no one has objected.[9]

On August 9, 2012, the trustee brought this adversary proceeding to avoid the two transfers from TMS to Wells Fargo. The trustee asserted that the transfers were made with actual intent to hinder, delay, or defraud creditors under Haw. Rev. Stat. § 651C-4(a)(1), and that the transfers were "constructively fraudulent" under section 651C-4(a)(2) and -5.

The trustee moved for summary judgment on both the actual fraud and constructive fraud theories. I recommended that the district court enter judgment in favor of the trustee and against Wells Fargo on the actual fraud theory. I made no recommendation on the constructive fraud theory because I thought summary judgment on the actual fraud theory was warranted.

The district court rejected this recommendation and returned the case to the

---

[9] The court can take judicial notice of the fact that papers have or have not been filed in the court's records. Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'") (citation omitted).

4

bankruptcy court.

The trustee now seeks partial summary judgment on the constructive fraud theory that I initially declined to reach.

## II. LEGAL STANDARDS

### A. Bankruptcy Code § 544(b).

A bankruptcy trustee "may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title . . . ."[10] This section permits trustees to assert avoidance claims that an actual creditor could assert under state law or federal nonbankruptcy law.

To the extent the trustee is able to avoid a transfer, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ."[11]

"In seeking recovery of [fraudulent transfers], the trustee stands in the overshoes of the debtor corporation's unsecured creditors."[12]

"A claim . . ., proof of which is filed under section 501 of this title, is deemed

---

[10] 11 U.S.C. § 544(b).

[11] 11 U.S.C. § 550(a).

[12] *Hayes v. Palm Seedlings Partners-A (In re Agricultural Research and Tech. Group, Inc.)*, 916 F.2d 528, 534 (9th Cir. 1990).

5

allowed, unless a party in interest . . . objects."[13] In other words, an unsecured claim is allowed as soon as a proof of claim is filed, and it remains allowed unless and until someone objects to it.

### B. Constructive Fraud under Haw. Rev. Stat. § 651C-4(a)(2)

A debtor's transfer is fraudulent as to creditors whose claims arose before or after the transfer if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer and (1) the debtor was engaged or about to engage in a business or transaction for which the debtor's assets were too small; or (2) the debtor intended to incur or believed or reasonably should have believed that it would become insolvent because of the transfer.[14]

### C. Constructive Fraud under Haw. Rev. Stat. § 651C-5(a)

A debtor's transfer is fraudulent as to creditors whose claims arose before the transfer was made if (1) the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer and (2) the debtor was insolvent when it made the transfer or became insolvent because of the transfer.[15]

### D. "Reasonably Equivalent Value"

"Value is given for a transfer . . . if in exchange for the transfer . . . an

---

[13] 11 U.S.C. § 502(a).

[14] Haw. Rev. Stat. § 651C-4(a)(2).

[15] Haw. Rev. Stat. § 651C-5(a).

6

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 247   Filed 05/07/15   Page 6 of 12

antecedent debt is . . . satisfied."[16]

### E. "Insolvent"

Hawaii law uses a "balance sheet" definition of insolvency. "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation."[17] The court presumes a debtor was insolvent if the debtor "is generally not paying his or her debts as they become due . . . ."[18]

### F. Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[19] Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[20] This standard mirrors the standard for a directed verdict: the court must grant summary judgment if "there can be but one reasonable conclusion . . . ."[21]

---

[16] Haw. Rev. Stat. § 651C-3(a).

[17] Haw. Rev. Stat. § 651C-2(a).

[18] Haw. Rev. Stat. § 651C-2(b).

[19] Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056.

[20] *Huey v. Honeywell, Inc.*, 82 F.3d 327, 334 (9th Cir. 1996) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 247   Filed 05/07/15   Page 7 of 12

Once the moving party has carried its initial burden of production, the nonmoving party "must produce evidence to support its claim or defense."[22] If the nonmoving party "fails to produce enough evidence to create a genuine issue of material fact," the moving party wins the motion.[23]

In determining whether a party is entitled to summary judgment, the court views the evidence in the light most favorable to the nonmoving party and all reasonable inferences are to be drawn in favor of the nonmoving party.[24]

A party may object to evidence submitted in support of a summary judgment motion if the evidence cannot be presented in a form that would be admissible.[25]

Authentication is "a condition precedent to admissibility."[26] In order to authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[27] "However, a proper foundation need not be established through personal knowledge but can rest

---

[22] *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

[23] *Id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[24] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[25] Fed. R. Civ. P. 56(c)(2).

[26] *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

[27] Fed. R. Evid. 901(a).

8

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 247   Filed 05/07/15   Page 8 of 12

on any manner permitted by Federal Rule of Evidence 901(b) . . . ."[28] A proponent may authenticate an item of evidence by a witness's "testimony that an item is what it is claimed to be."[29]

## III. DISCUSSION

### A. Insolvency

The trustee argues that TMS was insolvent when it made the two transfers to Wells Fargo. The argument begins with TMS' internally prepared balance sheets as of August 31 and December 31, 2007, a few days after the two transfers to Wells Fargo.[30] The trustee's expert accountant then adjusted the balance sheets to bring them into compliance with generally accepted accounting practices ("GAAP").[31] Among other things, the accountant adjusted the book value of a portfolio of bonds that TMS held with Wachovia Securities from historical cost to their current market value, and eliminated as assets TMS' advances to Lindell and Hoaeae. The accountant also noted that other assets deserved further scrutiny, such as TMS's mortgage notes receivable and other assets.

Wells Fargo responds to this argument on multiple fronts.

---

[28] *Orr*, 285 F.32 at 774-75 (emphasis added).

[29] Fed. R. Evid. 901(b)(1).

[30] Dkt. 92-1 at 16-22, 48-54.

[31] Dkt. 86 at 12.

9

First, Wells Fargo objects to almost all of the evidence offered by the trustee, including the accountant's report, on a wide variety of grounds. I will not address these objections because, for the reasons given below, I would deny the trustee's motion even if all of the evidence were admitted.

Second, Wells Fargo contends that the trustee's accountant used an incorrect mode of analysis. Under the statute, the question is whether TMS' debts exceeded its assets "at a fair valuation." The book value of the assets, correctly reported in accordance with GAAP, may or may not coincide with the fair valuation of the assets. In his deposition, the accountant acknowledged that he did not have an opinion about the "fair valuation" of the assets.

The trustee argues that the court can and should independently determine the fair valuation of the assets. That is probably true, and in one instance it is easy; I have no doubt that the "fair value" of the bonds in the Wachovia account was their market value on the relevant date. Valuing the other assets, however, is a task best performed based on a full evidentiary presentation at trial.

**B.    Value.**

The trustee argues that the court should grant summary judgment on the issue of whether Wells Fargo gave reasonably equivalent value.

I previously recommended that the district court enter summary judgment on the question of whether Wells Fargo had established the "value" prong of its

10

affirmative defense under section 651C-8(a). The district had before it virtually the same arguments, and most of the same evidence, that the parties have offered this time. The district court decided that summary judgment was unwarranted. The court ruled that one interpretation of TMS' business records was consistent with Wells Fargo's theory, and that the jury should decide which interpretation was correct. There is no new information which might persuade the district court to reverse that conclusion.

### C. Prejudgment Interest.

The trustee argues that he is entitled to prejudgment interest and Wells Fargo objects. Their arguments are essentially the same as they made on the last motion for summary judgment. The district court did not reach this argument.

It is not necessary to decide the question of prejudgment interest until the trustee's entitlement to a judgment is decided. If the trustee does not recover a judgment, there will be no prejudgment interest. Therefore, a recommendation to the district court on prejudgment interest would be premature.

## IV. CONCLUSION

The trustee's motion is DENIED.

The reference of this case will be withdrawn on May 11, 2015. Considering the enormous effort and expense of this litigation to date, particularly in comparison with the amount in controversy, I strongly recommend that the district court schedule a

11

U.S. Bankruptcy Court - Hawaii   #12-90066    Dkt # 247    Filed 05/07/15    Page 11 of 12

settlement conference at an early date.

## END OF MEMORANDUM