Date Signed:
May 7, 2015



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>THE MORTGAGE STORE, INC.<br><br>                        Debtor. | Case No. 10-03454<br>Chapter 7 |
| DANE S. FIELD, Bankruptcy Trustee of The Mortgage Store,<br><br>                        Plaintiff,<br><br>   vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>                        Defendant. | Adv. Pro. No. 12-90066<br>USDC Civil No. 14-00064 DKW-KSC<br><br>Re: Docket No. 88 |

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT AS TO TRANSFERS MADE WITH ACTUAL <u>INTENT TO HINDER, DELAY, OR DEFRAUD</u>

     The trustee in this chapter 7 case alleges that two transfers from the debtor,

The Mortgage Store, Inc. (TMS), to the defendant, Wells Fargo Bank, N.A., are

avoidable, fraudulent transfers. The TMS trustee argues that TMS made the transfer

with the actual intent to hinder, delay, or defraud creditors and also that the transfers were "constructively" fraudulent.

The TMS trustee seeks summary judgment on his "actual fraud" claim. I will deny the motion. As is stated in more detail below, the district court has rejected my prior recommendation to grant summary judgment on that claim. Although the trustee has marshaled additional evidence and argument in support of his claim, I do not think the district court is likely to accept another recommendation to grant the same relief that it previously rejected.

I. STATEMENT OF FACTS

A. Undisputed Facts.

Between 1996 and 2008, George Lindell was the sole shareholder and president of TMS.[1]

In 2005, Mr. Lindell obtained a personal line of credit from Wells Fargo, which was secured by a mortgage on his residence. TMS had no liability to Wells Fargo to repay advances on Mr. Lindell's line of credit.[2]

On August 21, 2007, Mr. Lindell drew on his line of credit with Wells Fargo by writing a check for $196,000 to TMS and depositing it in TMS' checking account.[3]

---

[1] Dkt. 89 at 2 ¶ 1; dkt. 190 at 2 ¶ 1.

[2] Dkt. 89 at 3 ¶ 4; dkt. 190 at 2 ¶ 4; dkt. 50-1 at 2-3.

[3] Dkt. 50-1 at 3-4.

2

On October 10, 2007, TMS made a wire transfer to Wells Fargo in the amount of $197,555.92. This repaid the $196,000 which Mr. Lindell had borrowed from Wells Fargo, plus $1,555.95 in interest.[4]

Mr. Lindell again drew on his Wells Fargo line of credit on November 27, 2007 by writing a check to TMS for $195,000 and depositing it in TMS' checking account.[5]

On December 26, 2007, TMS made a wire transfer to Wells Fargo in the amount of $195,931.34. This amount repaid Mr. Lindell's second draw on his Wells Fargo line of credit plus interest.[6]

On the dates of both payments to Wells Fargo, TMS had creditors whose claims have not been paid.[7]

Wells Fargo took both transfers in good faith.

On December 31, 2009, Mr. Lindell transferred his interest in TMS to his daughter, Holly Hoaeae, and she became the president of TMS.[8]

**B.    Disputed Factual Issues.**

There are two factual issues in this case:

---

[4] Dkt. 50-1 at 4; dkt. 89 at 2 ¶ 2; dkt. 190 at 2 ¶ 2.

[5] Dkt. 50-1 at 4.

[6] Dkt. 50-1 at 4-5; dkt. 89 at 2 ¶ 2; dkt. 190 at 2 ¶ 2.

[7] Dkt. 89 at 6 ¶ 16; dkt. 190 at 5 ¶ 16.

[8] Dkt. 89 at 2 ¶ 1; dkt. 190 at 2 ¶ 1.

3

U.S. Bankruptcy Court - Hawaii    #12-90066    Dkt # 248    Filed  05/07/15    Page 3 of 13

1. Whether TMS made the transfers to Wells Fargo with the intent to hinder, delay, or defraud its creditors; and

2. Whether Wells Fargo took the transfers for a reasonably equivalent value.

**C.     Procedural History.**

On November 12, 2010, TMS filed this chapter 7 bankruptcy case.

Many creditors have filed proofs of claim in the bankruptcy case to which no one has objected.[9]

On August 9, 2012, the trustee brought this adversary proceeding to avoid the two transfers from TMS to Wells Fargo. The trustee asserted that the transfers were made with actual intent to hinder, delay, or defraud creditors under Haw. Rev. Stat. § 651C-4(a)(1), and that the transfers were "constructively fraudulent" under section 651C-4(a)(2) and -5.

The trustee moved for summary judgment on both the actual fraud and constructive fraud theories. I recommended that the district court enter judgment in favor of the trustee and against Wells Fargo on the actual fraud theory. I relied on a stipulated judgment, signed by Lindell, in which he agreed that he had regularly caused TMS to transfer money to or for the benefit of himself and his family members, and that these transfers were made with the actual intent to hinder, delay,

---

[9] The court can take judicial notice of the fact that papers have or have not been filed in the court's records. Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'") (citation omitted).

4

or defraud TMS' creditors. I noted that the only countervailing evidenced adduced by Wells Fargo was Holly Hoaeae's testimony that she always believed that TMS could pay its debts. I reasoned that summary judgment should be granted despite this testimony because no reasonable fact finder would believe it. Finally, I recommended that the district court determine that TMS received no value in exchange for the transfers. I made no recommendation on the constructive fraud theory because I thought summary judgment on the actual fraud theory was warranted.

The district court rejected this recommendation. The court held that "the stipulated judgment is simply too vague with respect to the scope of the fraudulent transfers to tie Lindell's admissions to the Wells Fargo transfers, particularly given that fraud must be established by 'clear and convincing evidence' and given this Court's obligation to view all facts in the light most favorable to Wells Fargo." The court also disagreed that Hoaeae's testimony was not sufficient to defeat summary judgment. The court noted that issues of witness credibility are for the jury to decide and should not be resolved on summary judgment. Finally, the court held that questions of fact precluded summary judgment on the issue of value.

## II.    LEGAL STANDARD

### A.    Bankruptcy Code § 544(b).

A bankruptcy trustee "may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured

5

claim that is allowable under section 502 of this title . . . ."[10] This section permits trustees to assert avoidance claims that an actual creditor could assert under state law or federal nonbankruptcy law.

To the extent the trustee is able to avoid a transfer, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ."[11]

"In seeking recovery of [fraudulent transfers], the trustee stands in the overshoes of the debtor corporation's unsecured creditors."[12]

"A claim . . ., proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."[13] In other words, an unsecured claim is allowed as soon as a proof of claim is filed, and it remains allowed unless and until someone objects to it.

### B. Haw. Rev. Stat. § 651C-4(a)(1).

"A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . ., if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the

---

[10] 11 U.S.C. § 544(b).

[11] 11 U.S.C. § 550(a).

[12] *Hayes v. Palm Seedlings Partners-A (In re Agricultural Research and Tech. Group, Inc.)*, 916 F.2d 528, 534 (9th Cir. 1990).

[13] 11 U.S.C. § 502(a).

6

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 248   Filed 05/07/15   Page 6 of 13

debtor . . . ."[14]

Because transferors rarely admit that they acted with fraudulent intent, direct evidence of that intent is not required and circumstantial evidence is admissible. The court may consider a wide variety of circumstantial evidence. The statute provides a non-exclusive list of factors, which are sometimes called "badges of fraud."[15] The court may also infer the requisite intent "from the mere existence of a Ponzi scheme" or from "knowledge that a transaction will operate to the detriment of creditors . . . ."[16]

Under Hawaii law, the trustee must prove the transferor's intent by clear and convincing evidence.[17]

### C. Haw. Rev. Stat. § 651C-8(a).

The transferee of a transfer made with the intent to hinder, delay, or defraud creditors has an affirmative defense if the transferee "took in good faith and for a reasonably equivalent value . . . ."[18] The transferee has the burden of proving both of

---

[14] Haw. Rev. Stat. § 651C-4(a)(1).

[15] Haw. Rev. Stat. § 651C-4(b).

[16] *Hayes*, 916 F.2d at 534-35.

[17] *Kekona v. Abastillas*, 150 P.3d 823, 830-31 (Haw. 2006).

[18] Haw. Rev. Stat. § 651C-8(a).

7

these elements.[19]

"Value is given for a transfer . . . if in exchange for the transfer . . . an antecedent debt is . . . satisfied."[20]

**D.    Summary Judgment.**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[21] Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[22] This standard mirrors the standard for a directed verdict: the court must grant summary judgment if "there can be but one reasonable conclusion . . . ."[23]

Once the moving party has carried its initial burden of production, the nonmoving party "must produce evidence to support its claim or defense."[24] If the nonmoving party "fails to produce enough evidence to create a genuine issue of

---

[19] *Hayes*, 916 F.2d at 535.

[20] Haw. Rev. Stat. § 651C-3(a).

[21] Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056.

[22] *Huey v. Honeywell, Inc.*, 82 F.3d 327, 334 (9th Cir. 1996) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[24] *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

8

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 248   Filed 05/07/15   Page 8 of 13

material fact," the moving party wins the motion.[25]

In determining whether a party is entitled to summary judgment, the court views the evidence in the light most favorable to the nonmoving party and all reasonable inferences are to be drawn in favor of the nonmoving party.[26]

A party may object to evidence submitted in support of a summary judgment motion if the evidence cannot be presented in a form that would be admissible.[27]

Authentication is "a condition precedent to admissibility."[28] In order to authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[29] "However, a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) . . . ."[30] A proponent may authenticate an item of evidence by a witness's "testimony that an item is what it is claimed to be."[31]

---

[25] *Id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[26] *Scott v. Harris*, 550 U.S. 372, 378 (2007).

[27] Fed. R. Civ. P. 56(c)(2).

[28] *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

[29] Fed. R. Evid. 901(a).

[30] *Orr*, 285 F.32 at 774-75 (emphasis added).

[31] Fed. R. Evid. 901(b)(1).

9

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 248   Filed  05/07/15   Page 9 of 13

## III. DISCUSSION

This motion essentially asks me to repeat recommendations that the district court has rejected. Although the trustee has labored mightily to offer additional reasons to grant summary judgment, I conclude that those reasons are not sufficient to overcome the district court's reasons to deny the first motion for summary judgment.

### A. Fraudulent Intent

The trustee maintains that, in addition to the stipulated judgment, the following categories of facts evidence TMS's fraudulent intent:

- *Adverse Inference from Lindell's Invocation of Fifth Amendment Privilege.* When Wells Fargo took Lindell's deposition, Lindell refused to answer almost all of the questions based on his Fifth Amendment privilege against self-incrimination.

- *Evidence of Ponzi Scheme.* The trustee's accounting expert has opined that TMS was insolvent by June 30, 2007, and that TMS was able to continue in business after that date only by repaying earlier investors with money borrowed from new investors. In order to maintain the fiction that TMS' business was functioning well and to induce investors to entrust their funds to TMS, TMS also paid investors who had purchased loans which TMS made to third parties, even though the third parties were not

10

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 248   Filed 05/07/15   Page 10 of 13

paying on the notes.

- *Manipulation of Accounting Records.* TMS manipulated its accounting records by misreporting the value of certain assets, including Lindell's debt to TMS and its portfolio of publicly traded bonds, in order to deceive third parties.

- *Badges of Fraud.* The applicable badges of fraud establish TMS' fraudulent intent.

Evidence such as this may well persuade the jury that TMS made the transfers to Wells Fargo with fraudulent intent. But, viewed through the lens that the district court has employed in this case, it is too broad, and not sufficiently tied to the Wells Fargo transfers, to justify summary judgment.

This is particularly so given the district court's decision that Hoaeae's testimony presents questions of witness credibility for the jury. The trustee mounts a convincing attack on her testimony, but the district court has already rejected nearly identical arguments. The district court clearly believes that the jury should evaluate her testimony.

### B. Value

The trustee argues that the court should grant summary judgment on Wells Fargo's affirmative defense under section 651C-8(a). Wells Fargo's good faith is undisputed, so the question boils down to whether a reasonably equivalent value was

11

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 248   Filed 05/07/15   Page 11 of 13

given for the transfers.

When the district court reviewed my prior recommendation on the issue of value, the court had before it virtually the same arguments, and most of the same evidence, that the parties have offered this time. The district court decided that summary judgment was unwarranted. The court ruled that one interpretation of TMS' business records was consistent with Wells Fargo's theory, and that the jury should decide which interpretation was correct. There is no new information which might persuade the district court to reverse that conclusion.

### C.    Prejudgment Interest

The Trustee argues that he is entitled to prejudgment interest and Wells Fargo objects. Their arguments are essentially the same as they made on the last motion for summary judgment. The district court did not reach this argument.

It is not necessary to decide the question of prejudgment interest until the trustee's entitlement to a judgment is decided. If the trustee does not recover a judgment, there will be no prejudgment interest. Therefore, a recommendation to the district court on prejudgment interest would be premature.

## IV.    CONCLUSION

The trustee's motion is DENIED.

The reference of this case will be withdrawn on May 11, 2015. Considering the enormous effort and expense of this litigation to date, particularly in comparison with

12

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 248   Filed  05/07/15   Page 12 of 13

the amount in controversy, I strongly recommend that the district court schedule a settlement conference at an early date.

## END OF MEMORANDUM

U.S. Bankruptcy Court - Hawaii   #12-90066   Dkt # 248   Filed  05/07/15   Page 13 of 13